(4 Misc. Rep. 247.)

PEOPLE ex rel. DAVIS v. TRUMAN et al., Excise Commissioners.

(Supreme Court, Special Term, Tioga County. June 27, 1893.)

1. INTOXICATING LIQUORS—REFUSAL TO GRANT LICENSE—CERTIORARI.

Laws 1893, c. 481, providing that the refusal of an excise board to grant a liquor license may be reviewed on certiorari from the supreme court, was not intended to provide for a review where the board had refused to grant the license after considering the application on the merits, since the duties of excise commissioners would thereby be imposed on the justices of the supreme court, in violation of Const. art. 6, § 10, declaring that "the justices of the supreme court shall not hold any other office or public trust."

2. SAME—ELECTION OF COMMISSIONERS TO REFUSE LICENSES.

Where the excise commissioners of a town were nominated and elected as "no license commissioners," that fact is a sufficient ground for refusing to grant licenses to sell intoxicating liquors, as the statutes providing for local option (Laws 1873, c. 549, § 6, and Laws 1892, c. 401, § 41) do not prescribe the methods of taking the vote.

Certiorari by Burr J. Davis to review the action of Charles F. Truman, Robert C. Smith, and Charles W. Buck, as commissioners of the board of excise of the town of Owego, in refusing to grant to relator a license to sell intoxicating liquors. Proceeding dismissed.

Sears & Lynch, for relator.

Frank C. Darrow and Mr. Andrus, for respondents.

FORBES, J.    This is a special proceeding by certiorari to review the action of the respondents, as excise commissioners for the town of Owego, in the county of Tioga, in this state, instituted under chapter 481 of the Laws of 1893, which amends section 24 of chapter 401 of the Laws of 1892.    The action of the board of the commissioners of excise is sought to be reviewed under the foregoing title, together with four other proceedings, instituted at the same time, and which, by a stipulation in open court, are to abide the event of this; and the decision here is to be regarded as the decision and determination of all of the questions arising in each.

This proceeding is in the nature of a mandamus to compel the board of excise to grant a license to the relator.    People v. Waters, (Sup.) 23 N. Y. Supp. 691, (Parker, J.,) and cases there cited.    By the return made to these several writs issued, all of the steps taken on the part of the respondents, and also on behalf of each relator, are shown, and there is no dispute about the regularity of the applications, the form of the bonds, the character and fitness of the relators to receive a license, if one were to be granted; nor is there any dispute in this case that the relator's place of business is a proper one in which to sell strong and spirituous liquors and wines, as a keeper of an inn, tavern, or hotel.    The relator is the owner of, and keeps as a public hotel, the Awaga House, in the village of Owego, N. Y., and this house is the leading hotel in said village. The relator is a highly respectable gentleman, possessing the requisite ability, and having ample accommodation, to entertain the

traveling public. The relator's application having been made to the board of excise, and the bond required by law having been offered at a regular meeting of the board on the 5th day of June, 1893, said board received and proceeded to act upon said application; and the respondents Truman and Smith, being a majority of the commissioners of excise, refused to grant a license to said relator; and, upon a demand having been made upon them for the grounds upon which said refusal was based, they made and signed a statement, giving their reasons for the rejection of said application and their refusal to grant said license. That statement reads as follows:

"The reasons of the board of excise of the town of Owego for refusing to grant a license in the case of the application of Burr J. Davis for a license, as keeper of an inn, tavern, or hotel are: That a majority of this board, to wit, Commissioners Truman and Smith, were nominated and elected as no-license commissioners; and that a majority of the voters of the town of Owego, at the last two annual town meetings therein, have practically expressed, by their votes for commissioners of excise, their opposition to the granting of any licenses. That there is no public necessity for granting such license, and that the granting such license would be injurious to the welfare of the public. That from all the facts and circumstances of this case, this board, in the exercise of its discretion, has refused to grant this license.

"Dated June 5, 1893.                                        C. F. Truman.
                                                           "R. C. Smith.

[Indorsed:] "Filed June 5, 1893. Fred W. Clifford, Clerk."

Under the same date, the minutes kept by the clerk of the board show all the proceedings had before said board, the number of applications made, the places sought to be licensed, the names of the applicants, and that all of the applications so made were rejected, and the licenses denied.

This proceeding presents a case in which a majority of the commissioners were voted for as nonlicensing commissioners by a majority of the electors of the town of Owego, and the respondents are practically attempting to carry out the instructions of their constituents. The rejection of the relator's application, and the refusal to grant him a license are actually based upon three grounds: First. That a majority of the board of the commissioners of excise are, in principle, opposed to the granting of any licenses in said town. Second. That, in their judgment, opinion, and discretion, the granting of a license would be an unwarranted disregard of the wishes of a majority of the voters of the town of Owego; that such action by the commissioners would be against public policy, and would be an irreparable injury to the community at large. Third. That upon a careful review of all of these facts and circumstances, known to them, they did exercise their discretion, as a board of commissioners, in refusing to grant a license to the relator, or to any other applicant therefor, in said town. This presents the single proposition whether, under the Laws of 1892 and 1893, the respondents have arbitrarily, and without sufficient reasons therefor, refused a license to the relator, and whether this court has any power to disagree with them in their conclusions, and to direct them to act differently upon said application. In

the case of People v. Waters, supra, Parker, J., in writing the opinion in that case, held "that no applicant for a license to sell strong and spirituous liquors and wines has the absolute right to receive a license therefor." The same opinion has recently been expressed in the case of Cantini v. Tillman, 54 Fed. Rep. 969. That was a case which arose in the circuit court of the United States for the district of South Carolina, and was decided March 1, 1893, where the question was quite ably discussed by Simonton, District Judge. The case arose upon the constitutionality of a state law permitting the state of South Carolina to control the sale of all intoxicating liquors within the state, under an act passed December 24, 1892, entitled "An act to prohibit the manufacture and sale of intoxicating liquors as a beverage within this state, except as herein permitted." The case at bar differs from People v. Symonds, (Sup.) 23 N. Y. Supp. 689, also decided by Parker, J., under chapter 401 of the Laws of 1892, and chapter 481 of the Laws of 1893. In that case it was held that the commissioners of excise had no right to reject summarily, without passing upon the merits of the application, the petition of the relator. At the close of the opinion, the following order was made:

"As it appears from the return that the board of excise did not consider the application of the relator on the merits, as it was their duty to do, the matter must be sent back to them for their consideration and determination."

In the case at bar the respondents received the application, passed upon the merits of that petition, as they claim, and refused the license, giving as the reasons therefor the statement already referred to and quoted; so that the question is here for the first time squarely presented whether such refusal to grant a license to the relator was the exercise of a proper discretion by said commissioners, and whether their position can be sustained under the laws of this state. It is too plain to admit of any serious dispute that it was not intended by the legislature of this state to substitute a justice of the supreme court in the place of the commissioners of excise when they refuse to act favorably in granting a license to any person; and, if that were the object of the statutes referred to, those acts are clearly unconstitutional, for the reasons:

First. The commissioners of excise must be elected by the people, under the laws of this state. They are to be voted for upon a separate ballot; and that office cannot be held, nor can its functions be performed, in effect, by a justice of the supreme court. Laws 1892, c. 401, § 4; Const. N. Y. art. 6, § 10. This provision of the state constitution applies as well to an appointment or substitution by the legislature as to an election by the people. The section reads as follows:

"Art. 6, § 10. The judges of the court of appeals and the justices of the supreme court shall not hold any other office or public trust. All votes for any of them for any other than a judicial office given by the legislature or the people shall be void."

As there is no statute giving to the relator an absolute right to demand a license from the excise commissioners, the attempt

by the legislature is to use the court as the instrument for granting the license through the commissioners, using their hands and names; to enforce the exercise of a judicial discretion nowhere given by statute, nor warranted by the decisions of the courts. It will be seen that this constitutional provision is intended to prohibit a justice of the supreme court from being substituted to act as a commissioner of excise in granting licenses, or in directing to whom licenses shall be granted, or to take the place of such commissioners, whose official acts are plainly pointed out by statute.

Second. A justice of the supreme court cannot, and should not, be compelled to exercise any except judicial functions. The court might have the power to enforce a law which is being disobeyed. Such act would be a proper judicial exercise of power; is lawful, and commendable, even. In the case of People v. Waters, supra, and the cases there cited, Mr. Justice Parker has fully discussed this last proposition, and with his conclusions in that respect I am satisfied. My views are also in harmony with those of that court with reference to the power of the justice to interfere with the discretion and determination of the board of excise, where the merits of the application have been passed upon and the license refused; and it seems to me that the conclusions arrived at in that case must be decisive of those questions in the case at bar, so far as the application and the refusal are concerned to grant the license in question.

The only remaining proposition to be discussed is this one: Was the application acted upon, and the license to the relator refused, so far upon the merits as to be binding upon this court? In the case of the application of People v. Symonds, Justice Parker also held that the former "local option" law of this state is not in force. He seems to have based his opinion upon the repeal of the Statutes of 1845, c. 300, passed May 14, 1845, and chapter 14 of the Laws of 1846, passed February 16, 1846, both of which acts were repealed by chapter 274 of the Laws of 1847, passed May 12, 1847. That the statutes of 1845 and 1846 were repealed by the act of 1847 there can be no doubt; and perhaps there is some question whether "local option" was revived by chapter 549 of the Laws of 1873, which was passed to amend an act passed April 11, 1870, and also to amend the general "act for the suppression of intemperance, and to regulate the sale of intoxicating liquors," passed April 16, 1857. By section 6 of the act of 1873 the following provision is made:

"Sec. 6. Nothing herein contained shall in any manner apply to any city or town where the majority of voters have voted for, or shall hereafter vote for, local prohibition, in accordance with any law providing for such vote, until such city or town shall reverse by vote such local prohibition."

"Sec. 7. This act shall take effect immediately."

I have been unable to find any law which wholly revives the act of 1845. While the peculiar wording of section 6 of the Laws of 1873 predicates the validity of local option upon some prior act of the legislature, which it was assumed was then in force, per-

mitting local prohibition, it will be seen, however, by reference to chapter 401, § 41, of the Laws of 1892, that local option is, in effect, re-enacted, without prescribing definitely and at length, as did the law of 1845, the method of preparing the ballots and of casting the vote by the people. This act is so framed that it does not make section 41 of the act of 1892 dependent upon any prior law of this state, but in terms it does give the right to a majority of the voters of a particular town to say by their ballot that local prohibition shall be enforced in that town, when a majority of the voters may so determine. The section referred to reads as follows:

"Sec. 41. Local Option. Nothing herein, except section 31, shall in any manner apply to any town where the majority of voters have voted for, or hereafter vote for, local prohibition, until such town shall reverse by vote such local prohibition."

It is true that there is no method pointed out by which a ballot shall be prepared in which the voter shall say that he is in favor of local prohibition, but he surely has the right to nominate in caucus, or, without such nomination, to place upon his ticket any name, and vote for any person, whom he knows to be in favor of not granting licenses. Montgomery v. O'Dell, (Sup.) 22 N. Y. Supp. 412. And if a majority of the voters of a town so express themselves by their ballots, voting for an excise board upon whom they rely not to grant licenses, they have a perfect right to do so; and in that manner they do, by local option, in effect establish local prohibition, within the meaning of section 41 of the Laws of 1892; and the commissioners so elected have an undoubted right, relying upon their own judgment, supported by a majority of the legal voters, to refuse all licenses, and thus establish in fact local prohibition under that law. It must therefore be held that the respondents have done all that they are required to do by section 17, c. 401, of the Laws of 1892. They met in the town, received and considered the application of the relator, and decided that it was not a proper case in which to grant, and determined that they would not grant, a license.

The facts stated in the return must be taken as established. People v. Waters, supra, and cases cited. By the return it appears that a majority of the voters of the town of Owego, at a regular town meeting, voted for the enforcement of local prohibition, and against the granting of licenses, by electing a majority of non-licensing excise commissioners; and this court will not overrule their action, nor will it interfere with the enforcement of the will of the people expressed by such majority. The court must assume that the majority of the commissioners did not act arbitrarily in refusing to grant said license, or without sufficient reason therefor; but, as they believed, in the best interests of the town of Owego, disclosed by all of the facts and circumstances before them. Adopting their conclusions, this court now determines that said application for a license to the relator was denied for good and sufficient reasons therefor, and the determination of the majority of the board of excise commissioners must be and hereby is sustained;

but, as the main question involved in this case is a new one, without costs to either party. An order may be entered dismissing these proceedings accordingly.