(4 Misc. Rep. 547.)

PEOPLE ex rel. WATKINS v. COMMISSIONERS OF EXCISE OF TOWN OF WARSAW.

(Supreme Court, Special Term, Erie County. August, 1893.)

INTOXICATING LIQUORS—REFUSING LICENSE—GROUNDS.

The fact that the excise commissioners of a town were nominated and elected as "no-license" commissioners is sufficient ground for their refusal to grant a license to sell intoxicating liquors, since this is the established and customary way for a town to enforce local prohibition, and its right to enforce it is recognized by Laws 1892, c. 401, § 41, excluding towns "where the majority of voters have voted for or hereafter vote for local prohibition" from the operation of that chapter.

Certiorari on the relation of Charles T. Watkins to review the action of John B. Smallwood, Stephen C. Vincent, and James O. McClure as commissioners of excise of the town of Warsaw, in the county of Wyoming, in refusing to grant to the relator an hotel license for the sale of liquor. Dismissed.

I. Sam Johnson, for relator.

George W. Botsford, for respondents.

WARD, J. The relator keeps an hotel in the town and village of Warsaw, known as the "Watkins House." This village has about 4,000 inhabitants. Watkins is a man of good character, and competent to keep a first-class hotel. The hotel building is a fine one, and every way suitable to carry on the business for hotel keeping, and properly furnished for that purpose. Commissioner Smallwood was duly nominated and elected as a no-license commissioner of excise for the town of Warsaw, at a regular town meeting held in February, 1891. Stephen C. Vincent was in the same manner nominated and elected as a no-license commissioner at the town meeting held in February, 1892. Commissioner McClure was duly nominated and elected as commissioner favoring license at the town meeting held in February, 1893. These commissioners duly qualified and acted as such, and on the 7th day of July, 1893, while they were in session as a board of excise in the town of Warsaw, the relator presented to them a written application for an hotel license, accompanied by a bond and affidavits, which bond and application were sufficient and as required by law. The commissioners made a return to the writ, which, among other things set forth:

"That, after fully considering said application, it was determined by a majority of said commissioners, comprising such board, that no license should be granted thereon, and the statement was then and there recorded of the

reason of such determination as follows: 'That a majority of the excise board were elected as no-license commissioners,'—all of which is respectfully submitted, including copies of all papers upon which our action is based."

The papers here referred to were the application, bond, and certain affidavits showing the qualifications of the relator, the condition of his premises, and other reasons submitted to the board to justify the granting of a license. Several other applications were made for licenses in the same town by hotel keepers, and all were rejected for the same reason. No license was therefore granted in the town, the commissioners elected as anti-license commissioners voting against the license, and the other one voting for it. These facts are undisputed, and the question is fairly up whether the reasons given by the commissioners for their action in refusing a license to the relator affords any justification for their action, or whether the court will treat their refusal as arbitrary, and direct them to grant a license to the relator.

A brief review of the excise legislation of this state may be profitable in disposing of the questions arising on this proceeding. By chapter 300, Laws 1845, amended by chapter 14, Laws 1846, electors of the several towns and cities of this state were authorized to determine by ballot whether the board of excise should grant licenses to sell intoxicating liquors, and, if they should vote in favor of no license, then the board was prohibited from granting any licenses. These acts were repealed by chapter 274, Laws 1847. The legislature in 1855 (chapter 231 of the Laws of that year) passed an act entitled "An act for the prevention of intemperance, pauperism, and crime." This was known as the "Prohibitory Law," whereby the sale or giving away of intoxicating liquors was absolutely forbidden, except for mechanical, chemical, medicinal, and sacramental purposes, under certain conditions, and a violation of this law was punished criminally, and it further provided that all acts and parts of acts inconsistent therewith were repealed. The state thus entered upon a system of prohibitory legislation, the first in its history. But this was a short-lived system, for the court of appeals, in March, 1856, in the action of Wynehamer v. People, reported in 13 N. Y. 378, declared the law unconstitutional. The next year the legislature passed a general act, (chapter 628, Laws 1857,) entitled "To suppress intemperance, and regulate the sale of intoxicating liquors." This is what is generally known as the "Excise Act of 1857," and was comprehensive in its character, establishing a complete license system, and providing punishments for its violation, and for the appointment of county commissioners in each county, who should have the power to grant licenses to inns, taverns, etc., but the conflict between those who favored prohibitory legislation and those who favored the license system was not yet ended. In 1870 (chapter 175 of the Laws of that year) another act was passed on the subject, entitled "An act regulating the sale of intoxicating liquors," and provided that the boards of excise of the towns should be the "supervisor and justices of the peace thereof for the time being, respectively," and they should have the power

to grant licenses to any person or persons of good moral character who should be approved by them, etc., and made provision for the boards in villages as well. The county commissioners were thus, in effect, abolished, and the subject of town licenses remitted to the town officers. By chapter 549, Laws 1873, certain amendments were made to the two acts last mentioned, and concluded with this important provision, (being section 6:)

"Nothing herein contained shall in any manner apply to any city or town where a majority of voters have voted for or shall hereafter vote for local prohibition in accordance with any law providing for such voting until such city or town should have reversed by vote, such local prohibition."

We note here the reappearance of the prohibition sentiment in the legislation of the state, but this section 6 seemed to confine by its terms the operation of that section where a vote had been in accordance with some law providing such voting; and as the only law providing for such voting that had existed in the state had been repealed, as above shown, this proviso to the act of 1870, if strictly construed, was incapable of being carried into effect, but still stood to some extent as a legislative declaration in favor of local prohibition. The next year, by chapter 444, Laws 1874, the legislature provided for the election of excise commissioners in the several towns at their annual town meetings, who should constitute a board of excise of their several towns, and discharge the duties imposed upon the supervisor and justices of the peace of the town by chapter 175, Laws 1870, and laws amendatory thereof and supplementary thereto. By section 2 of this chapter (444) it was provided that the commissioners should be voted for upon a separate ballot, which should be deposited in a separate box, marked "Excise." No duties other than those of commissioners of excise were imposed upon these new officers. The purpose of the statute seemed to be to utterly divorce this office from all other town offices, and to provide for the election by the people of independent excise commissioners.

It is notorious (so much so that the court can take judicial notice of the fact) that from the passage of this last act until the present time, a period of over 18 years, local option or prohibition has been a question at issue in the towns of this state upon which the electors voted. These commissioners would generally be nominated in primary meetings or caucuses, the same as other town officers. They were nominated and voted for either as commissioners who would grant licenses, under proper conditions, or who would not grant them under any circumstances. A commissioner was elected each year. A majority of the board governed, and was a quorum. The commissioner stood pledged to carry out the wishes of the people who elected him. There was no difficulty about it. The will of the people as to local prohibition was as much expressed in the election of their representatives as commissioners, and as effectually, as though it was printed on their ballots. While the legislature had failed to create in terms any law providing for such voting as expressed in the act of 1873, yet the people, in prac-

tice, everywhere supplied this deficiency and carried out the purpose of the legislature as to local option by adopting this method; and the contest between the prohibition and license systems seemed to terminate and be settled upon the proposition of local prohibition or not, as the voters in the towns might determine. The contest was taken from the lawmakers to the people in their various localities. It was, perhaps, the only result that could be secured under all the circumstances and conditions growing out of the traffic in intoxicating drinks, involving, as it did, such large pecuniary interests, and about which public sentiment was so much divided. The commissioners thus elected were faithful to the trust reposed in them by the people, and, in towns where anti-license commissioners or a majority of them had been elected, no licenses were granted, and local prohibition secured. These statutes, with some amendments, not materially affecting them, remained in force until the passage by the legislature of chapter 401, Laws 1892, which was a general excise act, consolidating the other acts to a large extent, but repealing existing laws on the subject of excise, including the acts of 1857, 1870, and 1873 above referred to, and the amendments thereto, saving and excepting the act of 1874, providing for the election by towns of excise commissioners. But during this 18 years no attempt was made by the legislature to interfere with or overthrow the local prohibition system that had been adopted as above stated, but tacitly consented to and approved of the same in the act of 1892—First, by retaining the system of town commissioners intact, through which local option or prohibition had been exercised; and, secondly, by section 41 of the act of 1892, which is as follows:

"Local Option. Nothing herein, except section 31, shall in any manner apply to any town where the majority of voters have voted for or hereafter vote for local prohibition, until such town shall reverse, by vote, such local prohibition."

The section 31 referred to makes it a misdemeanor to sell without a license. This is a repetition of the local option clause in the act of 1873, with this significant omission: leaving out the words "in accordance with any law providing for such voting." The legislature had discovered that there was no law in existence that by its terms provided for such voting, and the conclusion right here is irresistible that, by such omission, it did recognize this local option system through the election of commissioners.

What did the legislature intend by this local option clause in the act of 1892? We are not to assume that this clause is meaningless, or that it was inserted in so important a statute without a full comprehension by the legislature of its purpose and effect; nor are we to assume that this clause was thrown into the act to delude certain members of the legislature into voting for it who may have had prohibition constituents. We cannot impute any such trick as this to the legislature. It was put there for a purpose, and that purpose must be subserved. In construing a statute, effect must be given, if possible, to all the language employed.

People v. McGloin, 91 N. Y. 250; Gibson v. Lenane, 94 N. Y. 183. At the time of the passage of the act of 1892, there was no general law in existence providing directly for local prohibition independent of voting for commissioners, nor have I been able to find any special act granting the right to particular towns to vote upon this subject. The only instance I have discovered is that provision in the charter of the village of Gloversville providing for the submission of the question of license or no license to a vote of the electors authorized by chapter 505, Laws 1873. And see Village of Gloversville v. Howell, 70 N. Y. 287. This was a law affecting a village, and not a town or towns. Had there been a general act providing for such voting, or had there been special acts authorizing such voting in particular towns to any extent, it might be claimed that this local option clause in the act of 1892 referred to such general law or to such special act; but, in the absence of any such condition, we must conclude that this clause refers to the only system of local option in vogue in the state, and that was the one we have been considering. We are permitted to make this deduction both by reason and by authority. It is reasonable to suppose that a system of local option which had been in existence for 18 years, without rebuke or dissent from the legislature, was known to every member of that body, and affected such vital interests, and was so important that, when the legislature came to deal with the subject and consolidate the excise laws, it took notice of this system, and provided for it. It is elementary that a thing which is within the intention of the statute is within the statute, though not within the letter of it. "A strict and literal interpretation is not always to be adhered to. It is the spirit and purpose of the statute which are to be regarded in its interpretation, and, if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even though such construction is contrary to the literal meaning of some of the provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the lawmakers." People v. Lacombe, 99 N. Y. 43, 1 N. E. Rep. 599. "In construing a statute, the court may properly refer to the history of the times and the situation of the people when it was passed, for the purpose of determining its meaning, scope, and intention." In re Breslin, 45 Hun, 210. In the case last cited the question arose whether hotel keepers had the right to sell spirituous liquors to their guests on Sunday, to be used with their meals. It was contended that this could not be done under the prohibition contained in section 21 of the act of 1857, which forbade the sale or giving away of intoxicating liquors or wines on Sunday, and the court say (general term, first department) that statutes are to be construed with reference to existing things for the purpose of ascertaining what was the good that could result, or the evil that was to be overcome, by their passage; that it was perfectly notorious that, when the act of 1857 was passed, the existence of a bar-drinking saloon as a part of

an hotel was a distinguishing characteristic, and that there intoxicating liquors, drinks, or beverages were to be obtained during the day, without reference to meals, and the evil aimed at by the act of 1857 was general bar drinking on Sunday, and not the use of liquors at meals; that, while the legislature has been cognizant since 1857 of the sale of liquors by hotel keepers for their guests at their meals, it had made no special provisions against it, and had thereby recognized it as lawful and proper. This case goes very far to sustain the position here taken. See, as strongly confirmatory of this view, Sixth Ave. Ry. Co. v. Gilbert El. Ry. Co., 3 Abb. N. C. 372 et seq., and notes. The United States supreme court adopts this rule: "In construing an act of congress, the courts may recur to the history of the times when the act was passed." U. S. v. Union Pac. R. Co., 91 U. S. 79. The entire subject of a statute and the policy may be invoked in aid of the interpretation. State v. Mayor, etc., of Paterson, 35 N. J. Law, 197. I have reached the conclusion that the legislature, by the local option clause in the act of 1892, meant to recognize the system of local option or prohibition which was in existence in the state at the time of the passage of that act; that the portion of that clause that the act should not apply to any town where the "majority of voters have voted or hereafter vote" has reference to voting for commissioners who should favor local prohibition. Any other conclusion makes this clause useless and senseless. It follows from this that the towns of the state can continue to secure local option as in the past, if such is the will of voters.

The learned counsel for the relator argues that, conceding that this local option clause is to receive the construction I have given it, the town of Warsaw has reversed by vote such local prohibition, inasmuch as the last commissioner named was elected as a license commissioner, and, that being the latest expression of the town, local prohibition has been reversed there. I cannot concur in this view. The commissioners act as a body, and represent as a body the town. A majority governs. Whenever a town selects three commissioners, and a majority of them are anti-license, that is local prohibition, and it is not reversed until a majority of the board have been elected the other way. In People v. Truman, (Sup.) 23 N. Y. Supp. 913, the commissioners of the town of Owego made return to a writ of certiorari issued to them to inquire why a license had been refused to the proprietor of an hotel in Owego, and they return as a reason for such refusal "that a majority of this board, to wit, * * *, were nominated and elected as no-license commissioners, and that a majority of the voters of the town of Owego at the last two annual town meetings therein have practically expressed by their votes for commissioners of excise their opposition to the granting of any licenses, and there is no public necessity for granting such license, and that the granting of such license would be injurious to the welfare of the public; that, from all the facts and circumstances of this case, this board, in the exercise of its discretion, has refused to grant this license." Justice

Forbes, in pronouncing the opinion of the court in that case, after referring to section 6 of the act of 1873, above cited, and also referring to the act of 1845, says:

"I have been unable to find any law which wholly revives the act of 1845. While the peculiar wording of section 6 of the Laws of 1873 predicates the validity of local option upon some prior act of the legislature, which it was assumed was then in force, permitting local prohibition, it will be seen, however, by reference to section 41, c. 401, Laws 1892, that local option is, in effect, re-enacted without prescribing definitely and at length, as did the law of 1845, the method of preparing the ballots, and the casting of the vote of the people. This act is so framed that it does not make section 41 of the act of 1892 dependent upon any prior law of this state, but, in terms, it does give the right to a majority of the voters of a particular town to say by their ballots that local prohibition shall be in force in that town when a majority of the voters may so determine."

After citing section 41 of the act of 1892, he proceeds as follows:

"It is true that there is no method pointed out by which the ballot shall be prepared in which the voter shall say he is in favor of local prohibition, but he surely has the right to nominate in caucus, or without such nomination, to place upon his ticket any name, and vote for any person, whom he knows to be in favor of not granting licenses, [citing Montgomery v. O'Dell, (Sup.) 22 N. Y. Supp. 412;] and if a majority of the voters of the town so express themselves by their ballot, voting for an excise board upon whom they rely not to grant licenses, they have a perfect right to do so; and in that manner they do, by local option, in effect establish local prohibition, within the meaning of section 41 of the Laws of 1892; and the commissioners so elected have an undoubted right, relying upon their own judgments, supported by a majority of the legal voters, to refuse all licenses, and thus establish, in fact, local prohibition under that law."

This, it seems to me,. affords a complete answer to the application in this proceeding to compel the commissioners of Warsaw to grant a license to the relator. The learned justice in that case also says, at page 915:

"It is too plain to admit of any serious dispute that it was not intended by the legislature of this state to substitute a justice of the supreme court in the place of the commissioners of excise when they refused to act favorably in granting a license to any person; and, if that were the object of the statute referred to, the act is clearly unconstitutional."

And he proceeds to give his reason for that conclusion, the substance of which is that a justice of the supreme court cannot and should not be compelled to exercise any except judicial functions, and citing with approval the decision of Justice Parker in People v. Waters, (Sup.) 23 N. Y. Supp. 691. Justice Parker, in his opinion in that case, says, at page 693:

"But it may be said that the legislature could provide for two administrative tribunals to pass upon the same question, of which the board of excise should be the first, and the discretion of the last to be final; that the second or reviewing official should not be governed by the legal rules governing a review of an administrative board, but should pass upon the application in the same manner as the statute authorizes boards of excise to do; that it was intended by this act that the last official to exercise the discretion permitted by the statute should be a court or a judge thereof. Clearly such could not have been the intention of the legislature, for it was without power to require the supreme court or the justice thereof to perform other than judicial duties."

And Judge Parker, with his usual ability and clearness, proceeds to establish this position both by reason and authority.

It seems to me that the claim of the relator in this proceeding substantially comes within the condemnation of the paragraph just cited from Judge Parker's opinion. The court is substantially asked here to overrule the judgment and discretion of the commissioners, and direct them absolutely to issue a license to the relator. The statute (chapter 481, Laws 1893) does not command the court to make the order asked for here, but the court may make an order commanding, etc., so it is discretionary with the court even should the court be of the opinion that, in a strictly legal sense, the license has been arbitrarily denied, or denied without good, legal reasons. No one has the right to demand a license. 23 N. Y. Supp. 691, 913, supra.

The question remains whether the refusal in this case to grant a license to the relator was arbitrary, or without good reasons. The reference to the statute hereinbefore made shows that the commissioners had the power and might grant the licenses, but are not commanded to do so. Whatever else may be said, these commissioners have acted in good faith, believing that, as they were elected not to do the very thing that the relator asks, they are honorably bound by their obligations to the people electing them not to do. It cannot be said that they were acting willfully, or that they were intentionally violating the law. Were they acting arbitrarily or without good reasons in a legal sense? I cannot find that they were. The commissioners were asked by the relator to be false to their obligations and pledges, and, because they refuse so to do, the court is now asked to compel them. It is, at least, an ungracious office that the court is called upon to perform in this instance, and, for all the reasons stated above, it will not be done. It follows that the commissioners, in refusing a license to the relator, did not act arbitrarily or without good reasons, but that the application for a license to the relator was denied for good and sufficient reasons, and therefore the determination of the board of excise commissioners of the town of Warsaw must be, and hereby is, sustained. An order may be entered quashing the writ of certiorari, and dismissing these proceedings accordingly. Costs are not allowed to either party.